IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICIA ANN BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 4:13-cv-01693 SPM |
| ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

This matter is before the Court for judicial review of the decision by the Commissioner of the Social Security Administration to deny the application of Plaintiff, Patricia A. Brown for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). This Court has jurisdiction because 42 U.S.C. §§ 405(g) provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration (SSA) and because the parties have consented to have a United States Magistrate Judge dispose of this case, including entry of final judgment.

**I. BACKGROUND**

Plaintiff Patricia Brown injured her back while working at a Walmart Garden Center in April 2005. She filed a worker's compensation claim and was evaluated by several doctors. She continued working at Walmart but was restricted to "light duty" during the pendency of her worker's compensation case. Upon her release from worker's compensation, she was returned to normal duty. She transferred out of the Garden Center into the Deli Department where she

worked until November 2009. Brown testified that her pain never really improved and, in November 2009, she quit working because she couldn't take the pain anymore.

Brown filed an application for benefits under the Social Security Act on June 22, 2010, alleging disability commencing on November 2, 2009. She alleged disability due to degenerative disc disease and back and neck pain. Her application was denied and she requested, and was granted, a hearing before an administrative law judge ("ALJ"). On March 26, 2012, the ALJ found that Brown was not under a "disability" as defined in the Act. On June 27, 2013, the Appeals Council denied Brown's request for review. Thus, the ALJ's decision stands as the final decision of the Commissioner.

After considering the administrative record as a whole including the medical records, the transcript of the hearing before the ALJ, the ALJ's hearing decision, the parties' briefs and oral arguments, I am reversing the Commissioner's denial of benefits and remanding this case for further proceedings for the reasons set forth below.

## II. **DISCUSSION**

In appealing the Commissioner's denial of benefits, Brown's chief contention is that the ALJ's residual functional capacity ("RFC") assessment was not supported by substantial evidence. More specifically, Brown posits that the ALJ's finding that she could perform light work is not supported by substantial evidence because (i) objective medical evidence indicated that it was unlikely she could perform the physical exertions of light work; (ii) the ALJ improperly rejected an opinion by Brown's treating nurse practitioner that, as a result of her impairments, Brown's ability to lift, sit, stand, crouch and crawl was more limited than reflected by the ALJ's RFC assessment; (iii) even if the ALJ properly rejected the nurse practitioner's opinion, there is no other medical evidence in the record in support of the ALJ's RFC assessment; and (iv) Brown should be found

disabled because substantial evidence, including the opinion of the nurse practitioner, demonstrates that Plaintiff was limited to sedentary work at the time she turned 50 in July 2011.

At step four of the sequential evaluation process, an ALJ must assess a claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520. A claimant's RFC is an administrative assessment of the most the claimant can do considering the combined effects of all impairments. *See* 20 C.F.R. § 404.1545. "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). When formulating a claimant's RFC, the ALJ may consider factors such as the claimant's medical history and treatment, the objective evidence, daily activities, any lay statements in the record, the claimant's work history, as well as the medical opinion evidence. *See* SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

The ALJ in this case found that Brown retained the capacity to perform light work as defined in the regulations.[1] He also determined that she could occasionally balance, kneel, crouch, crawl, stoop, and climb ramps and stairs, but could not climb ladders, ropes, or scaffolds. To account for findings in the record that Brown had difficulty sitting and standing, the ALJ found that Brown needed to change positions for one to two minutes every hour. Finally, he found that Brown could occasionally reach overhead with her right arm, and she had to avoid

---

[1] Light work involves lifting no more than 20 pounds at a time, frequent lifting or carrying of objects weighing 10 pounds, and sitting, standing and/or walking, off and on, for a total of approximately 6 hours of an 8-hour day. *See* 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251 (1983).

exposure to extreme cold or humidity, pulmonary irritants, unprotected heights, and unprotected moving of machinery.

### A. The Objective Medical Evidence

Brown contends that the objective medical evidence does not support an RFC for light work. In support, Brown points to diagnostic MRI studies establishing that she was diagnosed with advanced degenerative disc disease. She also cites evidence that she exhibited symptoms such as limitation in her range of motion in her back and positive straight leg raise during physical examination. Indeed, the objective medical evidence distinguishes this case from cases in which more benign findings have been held to constitute "medical evidence" in support of a determination that a claimant can perform light or medium work.  *See, e.g., Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (upholding the ALJ's finding that the plaintiff could perform light work based on largely mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was "'silent' with regard to work-related restrictions such as the length of time she [could] sit, stand and walk and the amount of weight she can carry"); *Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (holding that physicians' observations that the claimant had normal muscle strength and mobility constituted medical evidence supporting the ALJ's conclusion that the claimant could lift 20 pounds occasionally and 10 pounds frequently); *Thornhill v. Colvin*, No. 4:12–CV–1150 (CEJ), 2013 WL 3835830, at *12 (E.D.Mo. July 24, 2013) (holding that medical records supporting the ALJ's statement that "physical examinations have been essentially unremarkable and reveal normal independent gait with no evidence of spine or joint abnormality or range of motion limitation or muscle tenderness" constituted medical evidence in support of a finding that the claimant could perform medium work).

However, it does not appear that the ALJ in this case rested either the hearing decision, in general, or the RFC determination, in particular, solely on the objective medical evidence. Instead, the ALJ acknowledged that Brown's medically diagnosed physical impairments could reasonably be expected to cause her alleged symptoms but concluded that, after considering all of the evidence, Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with the RFC. As such, even if Brown is correct that the objective medical findings fail to support an RFC for "light work" that fact, standing alone, would not be a basis for reversing the hearing decision in this case.

### B. Weight Given To Nurse Allen's Opinion

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001). Thus, although the ALJ is not limited to considering medical evidence, "some medical evidence 'must support the determination of the claimant's residual functional capacity, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" *Hutsell*, 259 F.3d at 712 (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). A reviewing court has the duty of determining whether the record presents medical evidence of the claimant's RFC at the time of the hearing. *Frankl v. Shalala,* 47 F.3d 935, 937–38 (8th Cir. 1995). Unless the record contains such evidence, the ALJ's decision cannot be said to be supported by substantial evidence. *Id.* An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. *Hutsell,* 259 F.3d at 712.

As Brown correctly observed, the only medical source statement in the record that offers an opinion about how Brown's impairments affected her ability to function in the workplace during the relevant time period is the opinion of Patricia Allen. Allen is a Nurse Practitioner Brown treated with at Quality Health Care Clinic, the office of Brown's primary care physician. Nurse Allen completed a Residual Functional Capacity form on January 30, 2012 finding, among other things, that Brown could only occasionally lift less than 10 pounds; stand or walk less than 2 hours in an 8 hour workday; sit less than 6 hours in an 8 hour workday and must periodically alternate sitting and standing to relieve pain or discomfort. If accepted, these lifting, standing and sitting restrictions would limit Brown to less than light work—i.e., sedentary work.[2]

At oral argument both parties recognized that, as a nurse practitioner, Nurse Allen is not an "acceptable medical source" and, thus, is not considered a "treating source" whose opinion is entitled to controlling weight. 20 C.F.R. §§ 404.1513(a) & (d)(1), 416.913(a) & (d)(1); SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). However, she is an "other source[]" whose opinions "may provide insight into the severity of [the individual's] impairment(s) and how it affects the individual's ability to function." SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003). The ALJ has more discretion when evaluating an opinion from an "other" medical source than when evaluating an opinion from an acceptable medical source. *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

---

[2] *Compare supra* n. 1 *with* 20 C.F.R. § 404.1567(a) (defining sedentary work to involve "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools"). *See also* SSR 83-10, 1983 WL 31251 (1983) (stating that sedentary work generally involves standing or walking no more than about 2 hours of an 8–hour day).

However, rulings issued by the Social Security Administration recognize the importance of considering opinions from sources other than "acceptable medical sources." For instance, in one ruling, the Social Security Administration found that "[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06–03p, 2006 WL 2329939, at *3 (Aug.9, 2006). In weighing opinions from other sources, the factors to be considered may include the length and frequency of the relationship, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the impairment(s), and other factors. *Id.* at *4.

Here there can be no legitimate dispute that, consistent with the foregoing social security rulings, the ALJ considered Nurse Allen's opinion and even accommodated some of her findings in the RFC. However, the ALJ explicitly rejected Nurse Allen's lifting, sitting, crouching and crawling limitations. (Tr. 30). The rejection of these limitations is significant because, under the facts of this case, the lifting and sitting limitations serve as a dividing line between the claimant's ability to perform light vs. sedentary work.[3] Although the hearing decision is far from clear, it appears the ALJ rejected Nurse Allen's lifting, sitting, and postural limitations because (i) the limitations were expressed on a check-the-box type summary form and the restrictions were never given in the course of ordinary medical treatment; (ii) the opinion was rendered by a nurse practitioner; (iii) although Brown was seen by an orthopedist who diagnosed Brown with

---

[3] Because Brown turned 50 while her claim was pending, this distinction takes on heightened importance. As Brown's counsel repeatedly pointed out during oral argument, a finding that Brown was limited to sedentary work would have required the ALJ to find Brown disabled under Social Security regulations.

advanced degenerative disc disease, the orthopedist did not impose similar restrictions on Brown; (iv) no other medical source found Brown's weight lifting to be that limited; and (v) the limitations were not consistent with the lack of surgery, mild medications and relatively conservative treatment sought by Brown.

The hearing decision as a whole seemed to place special emphasis on the fact that Brown worked for over a year following the diagnosis of degenerative disc.[4] In addition, the hearing decision notes, and the record evidence shows, that although Brown was working at the time she was diagnosed with degenerative disc disease in 2008, there is no evidence that her doctors placed her on any work restriction or that Brown herself requested such a restriction from any of her doctors.

The ALJ also suggests, and the record evidence demonstrates, that Brown sought sporadic care, at best, after the August 2008 diagnosis of degenerative disc disease. Brown was diagnosed with degenerative disc disease by orthopedist, Dr. Schoedinger, in August 2008. Following that diagnosis, Brown went to her primary care doctor on September 22, 2008. The treatment notes from that visit suggest that Brown had spoken with the orthopedist about a possible back surgery. (Tr. 299). However, after the visit in September 2008, it does not appear that Brown had surgery or otherwise sought *any* medical treatment until roughly 18 months later, on March 26, 2010. It is striking that Brown sought no medical treatment at all in the year leading up to her alleged disability onset date of November 2, 2009.

Finally, the ALJ found it significant that Brown's treatment was relatively conservative. The ALJ specifically noted the lack of surgery and the fact that throughout the relevant period

---

[4] Notably, her work history report reflects that in that position she frequently lifted up to 20 pounds 8 hours a day, 5 days a week. (Tr. 30-31, 173-174).

Brown was taking a lower tier narcotic such as Ultram and apparently not taking it regularly. (Tr. 31). The record evidence bears out those conclusions.

In determining whether the ALJ properly considered opinion evidence, the reviewing court must review the ALJ's discussion of the opinion evidence and, "[g]enerally, the court will not decide whether a source's opinion is well founded, but whether the ALJ provided sufficient reasons for rejecting the opinion of a treating source." *May v. Astrue*, No. 09–CV–3480–NKL, 2010 WL 3257848, at *9 (W.D. Mo. Aug. 16, 2010)(citation omitted). In light of the record evidence in this case, even if Nurse Allen's opinion was consistent with the objective medical evidence, as Brown suggests, the reasons articulated by the ALJ are valid reasons for discounting her opinion. *See, e.g.,* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."); *Hensley v. Barnhart*, 352 F.3d 353, 356 (8th Cir. 2003) (holding that the ALJ's decision to discount treating physicians' opinions was proper when the treating physicians' opinions tended to conflict with the opinion of a specialist); *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (holding the ALJ did not err in giving minimal weight to the report of a treating physician where the opinion was conclusory and contained significant limitations not reflected in his treatment notes); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (affirming the ALJ's decision to discount the opinion of a treating physician where it contained limitations that "stand alone" and "were never mentioned in [the physician's] numerous records of treatment . . . nor were they supported by any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted"); *Perkins v. Astrue*, 648 F.3d 892, 898–99 (8th Cir. 2011) (finding the ALJ properly discounted a

Medical Source Statement in part because the claimant had received only conservative treatments).

In sum, because the ALJ provided sufficient reasons for rejecting Nurse Allen's opinion, the ALJ's rejection of Nurse Allen's lifting, sitting and postural limitations is not, standing alone, a basis for remand. However, for the reasons discussed below, the fact that the ALJ may have had valid reasons for rejecting Nurse Allen's opinion does not end the inquiry as to whether the RFC is supported by substantial evidence.

### C. Some Medical Evidence

Brown contends that the RFC assessment lacks supportive medical evidence. I agree. Even though the ALJ indicated that he was giving Nurse Allen's opinion "partial weight," Nurse Allen's opinion cannot reasonably be construed as medical evidence in support of the ALJ's determination that Brown could meet the physical requirements of "light work." As noted above, the ALJ expressly rejected as too restrictive Allen's lifting, sitting and postural limitations. Although the ALJ concluded Brown could lift up to 20 pounds at a time and frequently lift or carry objects weighing 10 pounds, it is unclear what medical evidence supports that conclusion.

The report of the consultative examiner, Dr. Barry Burchette, also fails to constitute some medical evidence in support of the ALJ's RFC assessment. Brown was seen by Dr. Burchette in October 2010. As Brown's counsel pointed out during oral argument, Dr. Burchette's objective findings on physical examination were very similar to those of Nurse Allen's. Both Dr. Burchette and Nurse Allen found a positive straight leg raise test on the right and limited range of motion in the lumbar spine. Nurse Allen examined Brown a little more than one year *after* Dr. Burchette and found Brown had limited range of motion in her back, neck, and shoulders. One year before Nurse Allen's examination, Dr. Burchette found limited range of motion in Brown's back, only.

Dr. Burchette, however, observed that Brown walked with a 15 degree stoop but walked without a limp and did not need an assistive device. However, unlike Nurse Allen, Dr. Burchette did not assess what Brown could or could not do in the workplace 8 hours a day, 5 days a week in light of his clinical findings. Because the consultative examiner wholly failed to offer an opinion regarding how Brown's impairments affected her ability to function in the workplace, his report cannot form the basis for an assessment of plaintiff's functional ability. *See Barton v. Astrue,* 549 F. Supp.2d 1106, 1123 (E.D. Mo. 2008).

I agree with the Commissioner that an ALJ need not rely entirely on the opinion of a particular medical source or "choose between the opinions of any of the claimant's physicians in determining the claimant's RFC." *Merritt v. Astrue,* No. 11–5080–SSA–CV–SW–MJW, 2012 WL 6726486, at *2 (W.D. Mo. Dec. 27, 2012)(internal citation omitted). However, in this case, it is not obvious from a review of the record what other medical evidence might support the RFC assessment.

For example, the medical evidence demonstrates that prior to her alleged disability onset date of November 2, 2009, Brown injured her back at work in April of 2005 and re-injured her back in September 2005. During that time frame, she was evaluated by several specialists. An orthopedist, Dr. Tull, saw Brown after the initial injury in April 2005, but before the second injury in September 2005. Dr. Tull diagnosed low back pain, mechanical, with no evidence of radiculopathy; he concluded that Brown's long term prognosis should be good in light of her physical examination and MRI. Dr. Gragnani, an occupational and environmental doctor, saw Brown both before and after her first and second on-the-job injuries with this last examination of Brown taking place in October 2005. He concluded that there were no physical findings that correspond to Brown's subjective complaints and that Brown was "magnifying" her symptoms.

The ALJ gave these statements from the 2005 examinations "very little weight because they were before the alleged onset date, the claimant returned to work afterward, and has had an MRI since then in 2008." (Tr. 29).

The hearing decision fails to mention findings by Dr. Cohen, a neurologist who examined Brown in March 2006. Dr. Cohen diagnosed Brown with disc protrusion and herniation at L4-5 and L5-S1 and aggravation of the same. Dr. Cohen found that she had a 30% whole person disability at the level of the lumbar spine in light of those impairments.

As noted above, diagnostic MRI studies performed by Dr. Schoedinger in August 2008 established that Brown had multi-level degenerative disc disease. (Tr. 263-64). Dr. Scheodinger found, among other things, Modic Type I degenerative endplate changes at L5-S1;[5] Schmorl's nodes at multiple levels in the thoracic spine and at the inferior endplate of L1;[6] disc desiccation at L4-5 and L5-1 with at least moderate loss of disc height at L5-S1; a 2-3mm annular disc bulge at L3-4; a 3 mm annular disc bulge at L4-5; a 3-4 mm annular disc bulge slightly lateralizing to the left at L5-S1 with a focal central disc protrusion measuring 13mm in traverse dimension; and that the combination of the annular disc bulge and the facet hypertrophy causes moderate left neuroforaminal stenosis. (Tr. 263). In discussing these findings the ALJ characterized Brown's diagnosis as being one of an "*advanced*" degenerative disc disease. (Tr. 29).

The hearing decision notes that neither Dr. Schoedinger, the orthopedist who diagnosed Brown with degenerative disc disease in 2008, nor any other medical source (besides Nurse

---

[5]Modic changes type 1 have been described as disruption and fissuring of the endplate with regions of degeneration, regeneration, and vascular granulation tissue. *See Modic changes following lumbar disc herniation*, Hanne, B. Albert, et al., Eur. Spine J v. 16 (Jul. 2007), http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2219661/.

[6] Schmorl's nodes have been described as herniations of the invertebral disc penetrating into the vertebral body. *See Schmorl's nodes distribution in the human spine and its possible etiology*, Dar, Gali, et al., Eur. Spine J v. 19 (Apr. 2010),
http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2899828.

Allen), limited Brown to lifting 10 pounds. However, other than the MRI results there are no treatment records from Dr. Schoedinger in the Administrative Record; and, it does not appear from the record that Dr. Schoedinger ever examined Brown after her alleged disability onset date on November 2, 2009. Thus, it does not seem reasonable to infer that the absence of a lifting limitation in MRI results reported by Dr. Schoedinger equates to a finding that Brown could frequently lift 10 pounds and occasionally lift and carry up to 20 pounds.

The remaining relevant treatment records are from Quality Health Care, where Brown treated with Nurse Allen, Dr. Lum, and other nurse practitioners. Treatment records from Quality Health Care following Brown's alleged onset date are few and far between, but they nevertheless reflect that Brown went to her primary care doctor's office on multiple occasions complaining of back pain. As the Commissioner correctly pointed out, the records from Quality Health Care reflect sporadic and conservative treatment. Those records also suggest that, except for Nurse Allen's findings during her January 2012 examination of Brown, other medical providers who examined Brown at Quality Health Care generally found her to have a normal range of motion in her extremities.[7] However, it is not at all clear how the range of motion findings would translate, if at all, into a claimant's ability to meet the physical requirements of light work. Although evidence of conservative and sporadic treatment may lend support for the ALJ's credibility determination, a "credibility finding cannot substitute for medical evidence to support a finding that a claimant has a residual functional capacity to work." *Hulen v. Astrue*, 909 F.Supp.2d 1065, 1072 (S.D. Iowa 2012) (citing *Soth v. Shalala*, 827 F.Supp. 1415, 1417 (S.D. Iowa 1993)). In sum, remand of this case is necessary because when the medical evidence of the record is

---

[7] It is unclear from the record that each of the medical providers who examined Brown performed the same diagnostic tests at each visit that Nurse Allen performed in January 2012.

taken as a whole, it is does not appear that there is medical support for the ALJ's conclusion that Brown could meet the physical requirements of light work in spite of her impairments.

Remand is also necessary because the record contains little, if any, other evidence which could be interpreted as supporting the ALJ's RFC determination. The hearing decision notes that Brown returned to work after she was diagnosed with degenerative disc disease in August of 2008. However, there is no evidence that Brown worked or engaged in work-like activities after her November 2, 2009 alleged disability onset date.

Because I find that remand is necessary, I will not address the remaining arguments raised by Plaintiff. However, on remand, the ALJ should obtain a medical determination as to the impact of Brown's medically diagnosed impairments on her ability to function in the workplace, either from one of Brown's treating physicians, or from a qualified medical professional who, at a minimum, has been given access to all of Brown's relevant medical records.

### III. **CONCLUSION**

For all of the foregoing reasons, the Court finds the ALJ's decision is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **REVERSED** and remanded for proceedings not inconsistent with this Memorandum and Order**.**

A separate judgment in accord with this Memorandum and Order is entered on this date.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of June, 2014.